## BERTHA S. M. OERTEL v. J. HOMER PIERCE.[1]

December 22, 1911.

Nos. 17,284—(159).

**Service of summons — evidence.**

Finding of the trial court to the effect that the summons in an action in which default judgment was rendered was not in fact served upon the defendant therein *held* sustained by the evidence.

**Review of finding of trial court — evidence necessary.**

The rule guiding this court in the consideration of the question whether the findings of the trial court are sustained by the evidence remains the same, whether the fact found be required to be established by a preponderance of the evidence, or by clear, convincing, or satisfactory evidence. The evidence must be clearly against the findings in either case to justify reversal.

**Waiver of foreclosure of mortgage.**

The mortgagee was the purchaser at the foreclosure of his mortgage, and subsequently, and before the expiration of the period of redemption, entered into an agreement with the mortgagor extending the time for the payment of the mortgage debt beyond the period for redemption. *Held*, on the facts stated in the opinion, that the legal effect of the agreement and the part performance thereof was a waiver of rights acquired under the foreclosure, and an annulment thereof, leaving the parties in the relation of mortgagor and mortgagee, with the right of redemption still subsisting.

After the former appeal, reported in 112 Minn. 397, 128 N. W. 671, the complaint was amended to allege that the summons in the action brought to secure a deficiency judgment had never in fact been served upon plaintiff; that the dealings between plaintiff and defendant with reference to the foreclosure operated to set the foreclosure aside, and by reason thereof defendant's right in and to the mortgaged premises was that of a mortgagee in possession. The answer to the amended complaint specifically denied the payment of $422.89; that the summons referred to had never been served on

[1] Reported in 133 N. W. 797.

plaintiff; alleged said summons was personally served upon plaintiff, denied that plaintiff ever authorized defendant to collect the rents of the Omaha Hotel; alleged that defendant had accounted to George C. Power for all sums collected from that building, and that the action was barred by the statute of limitations. The trial was before Brill, J., who made findings and conclusions of law as stated in the opinion. From an order denying defendant's motion to vacate the judgment entered pursuant to the findings, he appealed. Affirmed.

*Stringer & Seymour,* for appellant.

*James A. Kellogg* and *Morphy, Ewing & Bradford,* for respondent.

BROWN, J.

Action for an accounting of the rents and profits of certain property alleged to belong to plaintiff, and for other relief. After a trial before the court without a jury, findings of fact and conclusions of law were duly made, and judgment ordered for plaintiff as prayed for in the complaint. Defendant appealed from an order denying a new trial.

The findings of the court disclose the following facts:

Plaintiff was, on June 20, 1889, the owner in fee simple of the real estate and premises involved in the action. On that day, her husband joining therein, plaintiff executed and delivered to defendant a mortgage upon the property to secure the payment of the sum of $1,800 then due from her to defendant. Default was subsequently made in the payment of the debt, and defendant duly foreclosed the mortgage; the premises being sold thereunder on April 5, 1895, and defendant being the purchaser at the sale. A certificate of foreclosure in due form was issued by the sheriff, and subsequently recorded in the office of the register of deeds. The property at the sale brought the sum of $1,800, leaving as a balance due upon the mortgage debt the sum of $220.24.

Plaintiff was desirous of preserving her rights in the property, and sought the aid and assistance of George C. Power, who held a second mortgage thereon for the sum of $1,400. On April 4, 1896, the day preceding the expiration of redemption on the foreclosure,

at the instance and request of plaintiff, and for her benefit, Power entered into a written contract with defendant, acting through one Clark, his agent, but who was not authorized in writing to make a contract for the sale of the property of his principal, whereby defendant agreed to sell to Power the said real estate, upon the payment of the full amount due upon plaintiff's foreclosed mortgage, which was then agreed upon as $2,422.89; the payment to be made within three years from the date of the contract. The contract contained numerous provisions not necessary here to mention, and by its language created an obligation on the part of the defendant to sell the property, and a mere option on the part of Power to buy the same.

The court further found that at the time the contract was prepared and executed it was verbally understood that it was made in the interests of plaintiff, and that Power would make no payments thereunder; that the same should be made by plaintiff, and whatever rights Power acquired in the premises should inure to the benefit of plaintiff, the contract being held by him as security for the payment of his second mortgage. At the time the contract was so entered into plaintiff paid to Power the sum of $422.89, to be applied upon the mortgage debt, and Power in turn paid the same to defendant. Plaintiff thereafter was permitted by defendant to remain in possession of the property, and she collected and received the rent from tenants until October, 1896, paying of such proceeds the sum of $66 to Power, who paid the same over to defendant. Other than this sum, and the amount paid when the contract was entered into, namely, $422.89, no part of the debt has been paid, except as received by defendant from rents and profits as now to be stated, though on May 29, 1896, plaintiff paid the taxes upon the property.

During all the times stated plaintiff was also the owner of a certain building standing upon land owned by the Chicago, St. Paul, Minneapolis & Omaha Railway Company, in the city of St. Paul, known as the Omaha Hotel. In October, 1896, plaintiff being about to remove from the state, it was agreed between plaintiff, Power, and defendant that defendant should take possession of all said property, including the Omaha Hotel, which was not covered by the mortgage, and collect and receive the rents accruing therefrom, crediting the

same, less expenses of management of the property, upon the indebtedness represented by the foreclosed mortgage. Pursuant to this agreement, which does not appear to have been in writing, defendant took possession of said properties, and since then has had the care thereof, and has received the rents and profits therefrom, but has not applied the same to the payment of plaintiff's said debt to him, and he has refused to do so.

Plaintiff brought this action to compel an accounting of the rents and profits so received, and to redeem from the mortgage. As bearing upon the question to what extent or for what time plaintiff is entitled to an accounting respecting the rents received by him from the Omaha Hotel property, as well as the question as to the ownership thereof, a further statement of facts in reference thereto is necessary.

As already stated, the foreclosure of the mortgage left a deficiency due upon the debt secured, and on March 29, 1896, defendant brought an action against plaintiff to recover the same. The summons therein, as appears by the sheriff's return, was personally served upon plaintiff, defendant in that action; but she made no appearance, and on August 4, 1896, default judgment was rendered against her for the sum of $341.21. On April 30, 1902, nearly six years after the entry of the judgment, an execution was issued thereon, under which the sheriff levied upon and sold the Omaha hotel property; defendant being the purchaser at the sale, and paying therefor the sum of $100. The judgment and proceedings under the execution appear upon their face in all things regular, and vested in defendant, prima facie, title to that property from the expiration of the period of redemption. But plaintiff alleged in her complaint in this action that she had no notice of that action, that the summons therein was never in fact served upon her, and she demanded that the judgment be declared null and void for lack of jurisdiction in the court to render the same. The court found the allegations of plaintiff's complaint in this respect to be true—that the summons was not served upon her.

As conclusions of law the court found (1) that the judgment and proceedings thereunder, resulting in a sale of the Omaha Hotel prop-

erty, were void, because no service of the summons was made upon defendant therein; and (2) that the transaction by which defendant agreed upon payment of the mortgage indebtedness to sell and convey the property to Power, the agreement having been made in the interests and for the benefit of plaintiff, and to protect her title to the same, operated as an annulment of the foreclosure; that thereafter defendant's right in the property was that of mortgagee in possession; that an accounting should be had, and the net income received from the property by defendant applied in the discharge of the mortgage debt; and that plaintiff be granted the right of redemption.

Defendant on this appeal challenges certain parts of the findings of fact, and the correctness of the conclusions of law. We dispose of the questions thus raised in the order presented in the briefs.

1. It is contended that the findings of the court, to the effect that the summons in the action to recover the amount remaining due upon the mortgage indebtedness after the foreclosure was not served upon plaintiff, defendant therein, are not sustained by the evidence. In this we are unable to concur.

The evidence made the question one of fact, and an examination of the record brings to light no ground for interference with the conclusion of the trial court. While it is true that courts should proceed with caution in overturning the certificate of an officer charged with the duty of serving process, and should require unequivocal, clear, and convincing evidence of the falsity of the returns attacked before doing so (Vaule v. Miller, 69 Minn. 440, 72 N. W. 452; Osman v. Wisted, 78 Minn. 295, 80 N. W. 1127), yet the rule guiding this court in respect to the review of the findings of a trial court in such cases remains the same. The evidence must be clearly against the findings to justify interference by this court, whether the fact found is required to be established by a preponderance of the evidence, or by clear, convincing, and satisfactory evidence.

In the case at bar plaintiff testified explicitly that the summons was not served upon her, and she was corroborated in a measure by the testimony of other witnesses. Against this testimony is the certificate of the sheriff that personal service was in fact made. The

sheriff was called as a witness, and testified that he served the summons at the time and place given in the return, upon a person who stated to him that her name was that of plaintiff. He did not disclose a personal acquaintance with plaintiff, and, though it is clear that he in fact delivered the summons to some person at defendant's place of business, he was unable to say from personal knowledge that such person was defendant. The conflict arising from this state of the evidence presented a question of fact for the trial court, in the determination of which the appearance of the witnesses, their candor or lack of candor, truthfulness, and manner of testifying, were important considerations. The court resolved the question against defendant, and we are unable from the record to say that the evidence is clearly against the conclusions so reached.

There is no question but that the attorneys for plaintiff in that action, counsel for defendant in this action, proceeded in entire good faith, and caused the entry of the judgment in the belief that the officer's return was true. The result of the findings of the court, however, is that the officer was mistaken in supposing that he served the summons upon plaintiff. It follows, therefore, the summons not having been served, that the judgment rendered in that action is void, the sale of the Omaha Hotel property under the execution issued thereon vested no title in defendant, and the court properly ordered judgment in this action accordingly.

2. It is further contended that the trial court erred in the conclusion of law that the effect of the transaction between the parties subsequent to the foreclosure was an annulment of the foreclosure, and that defendant's position with reference to the property was that of mortgagee in possession, with the right of redemption in plaintiff still subsisting. We do not sustain this contention.

The facts found and disclosed by the record fully support the conclusion stated. It is well settled that a mortgagee, who becomes the purchaser of the mortgaged property on the foreclosure of his mortgage, may waive and abandon rights thus acquired, and in effect annul the sale, and that he does so when he enters into a valid agreement with the mortgagor prior to the expiration of the statutory period of redemption, which in effect extends the right of payment

of the mortgage debt beyond the redemption period; the intention of the parties being the protection of the title of the mortgagor. The legal effect of such an agreement is the abandonment or waiver of the rights acquired by the foreclosure, and a continuance of the relation of mortgagor and mortgagee. The same result follows, under some of the authorities, the conduct of the mortgagee in accepting payments upon the mortgage debt after the expiration of the period of redemption. Dodge v. Brewer, 31 Mich. 227; Lounsbury v. Norton, 59 Conn. 170, 22 Atl. 153; Osborne v. Tunis, 25 N. J. L. 633; Clarke v. Robinson, 15 R. I. 231, 10 Atl. 642; Scott v. Childs, 64 N. H. 566, 15 Atl. 206. The rule stated, at least where the waiver of the foreclosure rights is evidenced by a contract providing for the payment of the mortgage debt after the expiration of the redemption, has been followed and applied in this state. Heaton v. Darling, 66 Minn. 262, 68 N. W. 1087; Wenzel v. Weigand, 92 Minn. 152, 99 N. W. 633.

In the case at bar the parties entered into a written and also a subsequent parol contract, the purpose of which, the trial court was justified in finding, was to protect plaintiff's title to the property. The written contract was entered into the day preceding the expiration of redemption, and took the form of an agreement on the part of defendant to reconvey the property upon the payment of the indebtedness due him. The contract was executed by Clark, representing defendant, and Power, representing plaintiff. But for the want of written authority in Clark to so contract it was invalid, and the record does not show that plaintiff was ever informed of its provisions, or that she in any manner ratified the same. And though, being invalid, it could not be enforced by either party, except upon subsequent ratification or part performance, it may be referred to for the purpose of ascertaining the intention of the parties, and, in connection with the subsequent oral agreement, determining the legal effect of the transaction.

About five months after the written contract was made the parties entered into the further arrangement by which plaintiff surrendered to defendant possession of the mortgaged property and also the Omaha Hotel, to which defendant had no claim, under his

agreement to manage, collect, and receive the income therefrom, and apply the net proceeds in discharge of the mortgage debt. In addition to this, it should be further stated that, when the written contract was signed, plaintiff, or Power for her, paid to defendant over $400 to apply upon the mortgage indebtedness, and subsequent thereto she paid the taxes and $60 from the rents received by her from tenants occupying the mortgaged premises. In this situation of the relations between the parties, and their acts and conduct in reference to the property, we have no difficulty in sustaining the conclusion that the parties intended that title to the property should remain in plaintiff, and that defendant, as a matter of law, waived and abandoned all rights acquired by the foreclosure.

The further contention upon this branch of the case that the findings of fact are not supported by the evidence is not sustained. We find in the record evidence reasonably tending to support the findings and therefore sustain them. Stress is laid by defendant upon the concluding clause of the written contract, by which the intention of the parties is expressed as "a sale of the property, upon the terms therein set forth," and that "this contract was in no sense an agreement for security," and that the writing contained the entire understanding of the parties. And it is urged that this provision clarifies the transaction, and presents a contract for the sale of the property, and nothing else. We are unable to give the force and effect to this part of the contract contended for by defendant. In addition to the fact that it was invalid, the legal effect thereof, in connection with the later agreement, and not the form of the transaction, controls the determination of the case. As remarked by Mr. Justice Collins in Heaton v. Darling, supra: "We are to determine the nature and effect of the transaction by what was intended to be and was accomplished, not by the methods pursued." Lounsbury v. Norton, supra.

It follows, therefore, since the relation of the parties continued that of mortgagor and mortgagee, that the provisions of the written contract, limiting the time within which payment might be made, have no greater force than similar provisions in all mortgages. The contract did not, at the expiration of the time so fixed for payment,

116 M.—18.

expire absolutely, as contended. The legal effect of the transaction was the annulment of the foreclosure, and it was not reinstated by failure to make the payment within the time prescribed.

The case of Williams v. Stewart, 25 Minn. 516, is not in point. It was clear in that case that the parties intended the foreclosure there involved to ripen into title in the mortgagee, then to be transferred and conveyed to Mrs. Williams, the wife of the mortgagor. The transaction was clearly to finally, through the foreclosure, vest title in Mrs. Williams, and not to provide for a redemption. A redemption would have annulled the sale, and restored the husband's title to the property—a situation the parties did not intend to bring about. In the case at bar plaintiff was not attempting to acquire title through the foreclosure, but, on the contrary, to prevent title passing from her; and, to afford her an opportunity of protecting the same, the right of payment of the debt was extended to her, to be exercised in the manner already outlined.

The question involved in this action was not presented in Tingue v. Patch, 93 Minn. 437, 101 N. W. 792, nor in Pierce v. Clarke, 71 Minn. 114, 73 N. W. 522. In the latter case the contract provided for the foreclosure of the mortgage, and that the title thus acquired should subsequently be transferred by the mortgagee, who was to become the purchaser at the sale to Clarke, the other contracting party, who had guaranteed the payment of the mortgage debt. Phelps v. Western Realty Co. 89 Minn. 319, 94 N. W. 1085, did not present the question, and is not in point.

Our conclusions are in harmony with those reached by the learned trial court, the record presents no reversible error, and the order appealed from is affirmed.